UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI ALOFS for
MICHAEL ALOFS, Deceased,

    Plaintiff,

v.                                          Case No. 1:14-cv-1178
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                            /

**OPINION**

Terri Alofs brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying a claim for disability insurance benefits (DIB) brought by her deceased husband, Michael Alofs.[1]  By way of background, Michael Alofs passed away on August 25, 2012, three days before the ALJ entered her decision denying benefits (AR 5).[2] The Social Security Administration allowed his widow, Terri Alofs, to be made a substitute party in the administrative appeal (AR 6).  Terri Alofs, through counsel, filed this action in the Eastern District of Michigan on October 17, 2013. *See* Compl. (docket no. 1).  After determining that venue was improper, that court transferred the action to this district.  *See* Order (docket no. 14).

---

[1] Although Terri Alofs is the nominal plaintiff in this action, the term "plaintiff" shall refer to Michael Alofs, the deceased claimant.

[2] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff was born on September 17, 1971 (AR 178). He alleged a disability onset date of August 10, 2009 (AR 178). Plaintiff completed the 12th grade and had previous employment as a die setter in an automotive plant (AR 30, 183). He identified his disabling conditions as being bipolar with problems in his back, shoulders, knees, legs and feet (AR 182).[3] The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 28, 2012 (AR 19-31). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in

---

[3] The Court notes that there is no evidence linking plaintiff's death with his alleged disabilities. In this regard, the medical examiner could not determine a cause of death (AR 5).

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 10, 2009 and that he met the insured status requirements under the Act through December 31, 2014 (AR 21). At the second step, the ALJ found that plaintiff had the following severe impairments: osteoarthritis of the right knee, status post ACL and meniscus repair surgery; history of Bankart repair on right shoulder; small disc herniation at L5-S1; anxiety; depression; mood disorder; history of alcohol abuse; personality disorder; and syncope (AR 21).[4] At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

The ALJ decided at the fourth step:

[T]hat the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant: must be afforded the option to sit and stand at will; can frequently lift and carry and push and pull no more than five pounds and is limited to no more than frequent pushing, pulling and reaching with the right arm, which can only be used below shoulder level; can never operate foot controls; is limited to no more than frequent bending at the knee; can never climb ladders, ropes or scaffolds, crouch, kneel or crawl; can occasionally climb ramps and stairs, balance and stoop; must avoid use of and exposure to hazardous machinery and work around unprotected heights; is limited to work consisting of unskilled jobs as defined in the DOT with SVP levels of 1 or 2, with simple, routine tasks that can be learned in approximately 30 days involving no more than simple work-related

---

[4] The Court notes that in recounting plaintiff's severe impairments, plaintiff's counsel erroneously refers to him as "Harold Burke." Plaintiff's Brief (docket no. 12 at p. ID# 576).

4

    decisions with few workplace changes; and is limited to only occasional interaction
    with the general public, coworkers, and supervisors.

(AR 23). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 30).

    At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary work in the national economy (AR 30). Specifically, plaintiff could perform the following work in the region[5]: surveillance system monitor (1,600 jobs); inspector (1,200 jobs); and bench/small parts assembler (2,000 jobs) (AR 30-31). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from August 10, 2009 (the alleged onset date) through August 28, 2012 (the date of the decision) (AR 31).[6]

### III. ANALYSIS

    Plaintiff raised one issue on appeal:

> **The Commissioner erred as a matter of law in assessing Michael Alof's credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray Michael Alof's impairments.**

    Plaintiff contests the hypothetical question posed to the vocational expert (VE) at step five of the sequential evaluation. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be

---

[5] While the ALJ's decision did not identify the relevant "region," the vocational expert identified the region as Lower Peninsula of Michigan (AR 72).

[6] It appears to the Court that the ALJ's determination of disability should be through August 25, 2012, the date that plaintiff passed away.

produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Here, the ALJ's hypothetical question posed to the VE included the limitations as set forth in the RFC assessment (AR 23, 72-73). The thrust of plaintiff's claim is that the ALJ's improper assessment of his credibility resulted in an inaccurate hypothetical question.[7] An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113

---

[7] While plaintiff's brief also discusses the treating physician doctrine, he has not developed this argument with respect to the opinion of any particular treating physician. *See* Plaintiff's Brief at pp. ID## 578-80 (docket no. 12). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court deems this argument waived.

(6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

In support of his claim, plaintiff cites his hearing testimony that the disabling impairments are "lower, [sic] back, sciatic nerve," and "right knee, and my right shoulder" (AR 50). Plaintiff's Brief (docket no. 12 at p. ID# 576). According to plaintiff, these conditions resulted in pain radiating into his lower extremities which occurs "every day for my back" and affects "every movement" (AR 50-51). *Id.* In addition, plaintiff had "achy, sharp pain in my knee" when walking, that he can walk for 15 minutes, sit for "a while" and only stand for "20 seconds" (AR 51-53). *Id.* Plaintiff also had a burning pain when he used his right arm, a dull burning pain if he does not use the arm, that he cannot pull up or hold up his arm, and does not "really lift anything" with that arm (AR 54-55). *Id.* at p. ID# 577.

In support of his claim, plaintiff's brief cites the following medical evidence related to his knee. A medical record from June 15, 2010, which included knee complaints, noted that plaintiff was limping, and gave an impression of "right knee status post anterior cruciate ligament reconstruction, some articular cartilage injury, medial compartment with previous medial meniscectomy" (AR 256). Plaintiff's Brief at p. ID# 577 (docket no. 577). Plaintiff had an operation on April 12, 2010 indicating a "right knee arthroscopy, chondroplasty, medial femoral condyle, removal of some torn fibers of ACI; exam under anesthesia" (AR 277). *Id.* In addition,

7

a record dated April 20, 2011 revealed complaints of "right knee pain, intermittent swelling, associated with mechanical irritation" and "low back and bilateral lower extremity pain," and "intermittent right shoulder pain . . ." (AR 427). *Id.* Plaintiff also referred to a record dated April 23, 2011, which indicated ". . . inability to work due to the exacerbation of his pain" under the chief complaint section (AR 429). *Id.* With respect to his back pain, plaintiff pointed to a record dated January 20, 2010, which revealed "back and leg pain, back pain greater than leg pain with paresthesia involving both feet and legs" as well as a diagnoses of "high degree suspicion for degenerative disease at the L4-5 motion segment with postpocedural lumbar radiculitis" (AR 259). *Id.* at pp. ID## 577-78. Finally, with respect to his mental impairments (which included complaints of pain, worry and being claustrophobic), plaintiff was diagnosed with a "mood disorder, NOS, rule of ADHD" (AR 389). *Id.* at p. ID# 578.

The ALJ summarized plaintiff's claims as follows:

> The claimant is a 40-year-old individual who is alleging disability as the result of physical and mental impairments. He testified he experiences ongoing back pain, problems with his sciatic nerve, right knee and right shoulder. He admitted he takes Norco and Motrin in an attempt to alleviate the pain, but alleged it provides little relief. He reported he is unable to bend, lift or twist, and reported that every movement causes pain, which has continued to worsen each year. Specifically, in terms of his knee pain, he reported that he relies on a cane to ambulate and experiences significant swelling if he walks on it. He reported he is unable to walk for longer than fifteen minutes at a time and cannot stand for even twenty to thirty seconds without having to move due to discomfort. Due to his pain, he reported he has to sit reclined and experiences difficult sleeping, as he only gets approximately four hours of sleep per night and is unable to nap. As for his shoulder, he reported he experiences burning pain with any use, along with an unrelenting tingling sensation. He is reportedly unable to push or pull with his right arm and cannot lift anything higher than halfway. Due to his back problems, he alleged he is unable to bend over and cannot operate foot controls (though he had previously admitted he was able to drive a vehicle until his license was suspended due to drunk driving charges). He reported he rarely climbs stairs, usually only once every few months, and relies on a cane and handrails when doing so. The claimant denied assisting his wife (who is herself on disability due to mental problems (see, Exhibit 7F)) with any

>household chores other than lawn mowing, which he reported he was able to do at his own pace.

(AR 24).

In performing an extensive review of plaintiff's medical history, the ALJ made a number of findings with respect to plaintiff's credibility: plaintiff frequently declined the surgeon's physical therapy referral following his right knee surgery in October 2009; plaintiff re-injured his knee and underwent right knee arthroscopy and chondroplasty in April 2010, after which he was released to work nine hours per day, five days per week; while plaintiff complained of knee pain after April 2010, and saw a pain clinician (Dr. Winston), he did not seek further treatment from the surgeon or orthopedist; an independent medical evaluation in March 2011 with David Frye, D.O., was remarkable for a slightly larger knee circumference on the right with effusion and a slightly reduced range of motion, but indirect testing for meniscal pathology was negative, the patella was stable, and the patella facets were asymptomatic (AR 25). The ALJ found that plaintiff could occasionally climb ramps, climb stairs, balance and stoop "as demonstrated by his activities of daily living, which include playing with and caring for his young son (including occasional trips to the park) and some household chores (though the claimant denied doing much of anything at the hearing) (Exhibits 3E; 4E)" (AR 25).

With respect to plaintiff's back pain, the ALJ noted that his initial complaints were related to a work injury from 1994, but that plaintiff had continued to work for years after the injury (AR 26). Plaintiff's treatment (including opiates and occasional epidural injections) were reportedly effective and allowed plaintiff to work until he injured his knee in 2009 (AR 26). Dr. Winston continued to treat plaintiff with opiates and other medications through August 2011 when plaintiff "was discharged from Dr. Winston's practice for medication and behavior related issues (Exhibit

9

14F/2)" (AR 26). When plaintiff began treatment with a new health care provider, Michael Septer, D.O., in March 2012, his clinical findings were limited to range of motion issues, lumbar spasms and some hyperesthesia (Exhibit 15 F) (AR 26). The ALJ noted that "[t]here was no mention of gait problems or reliance on a cane, nor a request for updated diagnostic testing," and that the treatment record with Dr. Septer "regularly indicated improvement and a more tolerable level of daily function, personal interaction, and mental health with medication (Exhibit 15F)" (AR 26). In addition, the ALJ noted that plaintiff's back pain did not prevent him from working in the past, that there has been little worsening of this condition since 2008 (one year before his alleged disability onset date), when plaintiff was regularly working between 50 and 65 hours per week (Exhibit 3F) (AR 27).

>Based on this record the ALJ stated:

> Thus, absent specific findings which support that this condition [i.e., plaintiff's back condition] has now become work preclusive, the undersigned is remiss to credit the claimant's testimony that this particular impairment, or related issues such as leg pain, currently keep the claimant from working. However, giving some consideration to the claimant's allegation that he is unable to find a comfortable position, the claimant must be afforded the option to alternate between sitting and standing positions at will.

(AR 27).

With respect to plaintiff's mental health issues, the ALJ noted that plaintiff had moderate social limitations, treatment records which reveal some anger issues, side effects from medication which have been noted to cause fatigue, ongoing complaints of pain, a history of depression and testimony that "he does not have a lot of patience with others" (AR 28). For these reasons, the ALJ limited plaintiff to unskilled work with simple, routine tasks that can be learned

in approximately 30 days, involving no more than simple work-related decisions with few workplace changes (AR 28).

The ALJ concluded that plaintiff's complaints of suffering from disabling conditions were not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. While many of the credibility issues have been addressed above, the undersigned notes several other factors which negatively impact the veracity of the claimant's statements in terms of his limitations. For example, the claimant frequently indicated that his cane has been prescribed, either by Dr. Eastman or his physical therapist (Exhibit 6F - it is also noted that the claimant had declined physical therapy, despite the fact that it had been recommended by Dr. Eastman (Exhibit 3F)). However, a review of the medical evidence of record does not include such prescription, and while the record remained open for the receipt of such evidence, documentation pertaining to a prescribed cane was not forthcoming. In addition, the claimant's long-term reliance on opiates, and then abrupt discontinuance without any sort of intervening treatment for approximately seven months, not only suggest that chronic use of such pain medications were likely unnecessary, but demonstrates that the claimant's functionality was not nearly as impaired as he has alleged. Finally, the report of Dr. Frye [FN 1], the independent medical examiner, reveals very little in terms of objective findings relating to the claimant's alleged impairments. While Dr. Frye's assessment that the claimant was able to perform unrestricted work is afforded limited weight (Exhibit 13F), as the evidence described above warrants related limitations, this independent assessment suggests that the claimant's impairments do not result in the degree of functionally as alleged by the claimant.
>
>> [FN 1. While claimant's attorney is the same attorney who is representing the claimant in his ongoing workers' compensation matter, which this report was prepared in connection with, the report, which is unfavorable to the claimant, was not forthcoming until requested by the undersigned at the hearing (Exhibits 11E; 13F).]

(AR 29).

The ALJ has presented substantial evidence to support his determination that plaintiff's claims of disabling impairments were not credible. The record reflects that the ALJ

11

articulated contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. Plaintiff has failed to present a "compelling reason" to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: June 24, 2015 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge